[No. 15653-5-I.   Division One.   March 18, 1987.]

REGINA RINKE, *Individually and as Personal Representative, Appellant,* v. JOHNS–MANVILLE CORPORATION, ET AL, *Respondents.*

*William Rutzick* and *Schroeter, Goldmark & Bender*, for appellant.

*James A. Murphy, William C. McLaughlin, Charles Mertel, Paul C. Gibbs, Robert C. Manlowe, Paul T. Dalton, Victor L. Drexel, Lisa J. Gilden, Michael Mines, Megan Graves, Robert Israel, Scott Fallon,* and *Michael Green*, for respondents.

COLEMAN, J.—Regina Rinke appeals an order dismissing her action for the wrongful death of her husband. We reverse the dismissal and remand for trial, holding that the trial court misinterpreted the effect of CR 17(a).

On July 4, 1979, Martin Rinke died of lung cancer. On September 12, 1980, his widow, Regina, filed a complaint for personal injury and wrongful death against several defendants. Suing both in her own name and as personal representative of the estate of her husband, Rinke alleged that her husband developed lung cancer as a result of exposure to asbestos manufactured or sold by the defendants. At the time the suit was filed, however, Rinke had not actually been appointed personal representative of the estate of her husband. When the defendants answered Rinke's complaint, some of them asserted that she lacked the necessary legal capacity to initiate the lawsuit.

On July 30, 1984, Rinke was actually appointed personal representative of her husband's estate. On October 18,

1984, in her capacity as personal representative, she approved and ratified her previous actions in filing the wrongful death suit. At that time, she stated by affidavit that the delay in her appointment came about because she and her husband had signed a community property agreement which she believed made her personal representative.

On September 24, 1984, the defendants noted a motion to dismiss for lack of personal representative. The trial court held a hearing on this motion on November 2, 1984. At the conclusion of the hearing, the court determined that

> just an extreme amount of time has gone by when the objection was made in the form of the answer, and it seems to me that the whole idea of an objection is to give the other side some notice, and that's what was done by the answer, and if the notice is given and somebody doesn't take the cue and do something within a reasonable length of time, I think the rule dictates that the real party in interest hasn't done what was required under the rules, so I am granting the motion for summary judgment.

The trial court then dismissed most of Rinke's claims,[1] with prejudice, on the basis of CR 17(a).

This appeal raises two questions regarding the meaning and purpose of CR 17(a). First, may an action be dismissed solely because there is a delay between a defendant's objection and the time when the real party in interest joins and ratifies the action? Second, if dismissal in this situation is improper, under what circumstances will joinder and ratification by the real party in interest relate back to the filing of the suit, thereby avoiding the bar of the statute of limi-

---

[1]The trial court did not dismiss Rinke's action for damages for loss of consortium, holding that she was able to maintain that claim in her own name. This ruling has not been cross–appealed by the respondents. We note, however, that such a claim would be limited to damages incurred during Martin Rinke's lifetime. *See* Restatement (Second) of Torts § 693, comment *f*, at 497 (1977); 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 11.16(4), at 11–49 (1986). Any claim for loss of consortium damages occurring because of Martin Rinke's death would have to be brought by the personal representative of his estate, through a wrongful death suit. *See, e.g., Huntington v. Samaritan Hosp.*, 101 Wn.2d 466, 469, 680 P.2d 58 (1984).

tation?

■ CR 17(a) provides:

> **(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The text of the rule is identical to its federal counterpart; therefore, federal court interpretations of the corresponding federal rule are persuasive authority for interpreting the state rule. *Carle v. Earth Stove, Inc.,* 35 Wn. App. 904, 907, 670 P.2d 1086 (1983).

We first address the question of whether mere delay in joining the real party in interest warrants dismissal of the action. Rinke contends that the trial court erred in dismissing the action under CR 17(a) because at the time of the hearing on the motion to dismiss, the real party in interest issue had been resolved by her appointment as personal representative, coupled with her ratification of her previous actions. Respondents contend, however, that Rinke delayed too long before correcting the real party in interest problem. Because of this delay, respondents argue, the court correctly dismissed the suit even though Rinke had been appointed personal representative by the time of the motion to dismiss.

The Washington cases interpreting CR 17(a) have not specifically addressed this issue. The cases hold both that dismissal is proper when the real party in interest does not join or ratify prior to the motion to dismiss, *see In re*

*Estate of Boyd,* 5 Wn. App. 32, 485 P.2d 469 (1971), and that dismissal is improper when the record shows that there was joinder or ratification at the time of the hearing on the motion to dismiss. *Fox v. Sackman,* 22 Wn. App. 707, 591 P.2d 855 (1979); *In re Estate of Crane,* 9 Wn. App. 853, 515 P.2d 552 (1973). The cases do not decide, however, whether the mere delay in joining a real party in interest may ever be more important than the rule's principal concern that "[e]very action shall be prosecuted in the name of the real party in interest."

After an examination of the language and purpose of the rule, we must agree with Rinke that the trial court erred in dismissing the action. The rule is not intended as a method by which the trial court may sanction dilatory plaintiffs; rather, it is meant to insure that the real party in interest will be made a party to the suit at a time when the interests of the defendants will be protected.

We draw this conclusion from several sources. First, the relevant portion of the rule is phrased as a restriction on the court's authority to dismiss, not as a grant of authority to dismiss:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest[.]

Under this provision, the trial court should allow the plaintiff a reasonable time to join the real party in interest, even if the problem does not become apparent until late in the proceedings. *See Shank v. Naes,* 102 F.R.D. 14 (D. Kan. 1983) (court found that substitution was in the interests of justice and allowed plaintiff 10 days after the order to file an amended complaint); *James S. Black & Co. v. F.W. Woolworth Co.,* 14 Wn. App. 602, 544 P.2d 112 (1975) (trial court did not err when it allowed trial to proceed while plaintiff obtained authorization from real parties in interest).

The history of the rule supports our conclusion that the

rule does not focus primarily on the plaintiff's delay. The provision in question was added in 1966

> simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to *allow* an assignee to sue in his own name . . . [the 1966 provision was added] simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

Fed. R. Civ. P. 17(a) advisory committee note, 39 F.R.D. 85 (1966). The considerations enumerated in the advisory committee note are not served when the trial court dismisses solely because of a delay in joining the real party in interest. As long as no prejudice is shown, the real party in interest may be added at any time, even after trial. *See Betchard–Clayton, Inc. v. King,* 41 Wn. App. 887, 707 P.2d 1361 (1985); *Fox v. Sackman, supra.*

Finally, we note that modern rules of procedure are intended to allow the court to reach the merits, not to dispose of cases on technical niceties. *Carle,* at 908; *Fox,* at 709. CR 21, for example, allows liberal joinder and deletion of parties in order to reach the merits of a case: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *See James S. Black & Co. v. F.W. Woolworth Co., supra* (reading CR 17(a) in conjunction with CR 21); *see also* CR 1 (civil rules to be construed "to secure the just, speedy, and inexpensive determination of every action."). CR 17(a), in particular, is designed to expedite litigation, not to allow narrow constructions or technicalities to interfere with the merits of a legitimate controversy. *Carle,* at 908; *Fox,* at 709; *Crane,* at 856.

We conclude that the relevant provision of CR 17(a) is intended to protect the defendant from prejudice by insuring that a claim is prosecuted by the proper party. Dis-

missal under the rule is appropriate only when the trial court has allowed the plaintiff a reasonable time to bring the real party in interest into the suit and joinder, substitution, or ratification cannot be effected. In the present case, the purpose of the rule was fulfilled when Rinke became personal representative and ratified her previous actions. At that time, the defendants were protected to the same extent as if Rinke had been personal representative from the inception of the suit.[2]

Because we have determined that the trial court erred in dismissing the action based on the delay, we now address the question of whether Rinke's ratification relates back to the filing of the suit, thereby avoiding the bar of the statute of limitation. CR 17(a) provides that "ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Some courts have relied on the literal meaning of this provision to hold that any ratification automatically relates back, regardless of the reasons for the original failure to join the real party in interest. *See, e.g., Cummings v. United States,* 704 F.2d 437 (9th Cir. 1983); *Hess v. Eddy,* 689 F.2d 977 (11th Cir. 1982).

Most courts, however, have restricted relation back to situations where there has been an "honest mistake" or an "understandable mistake" in naming an improper party. These courts rely on the approach indicated in the advisory committee note to the 1966 amendment of the rule:

> Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed . . . *See Levinson v. Deupree,* 345 U.S. 648[, 97 L. Ed. 1319, 73 S. Ct 914] (1953); *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C. Cir. 1963). . . . [The relation back provision is] intended

---

[2]Our conclusion on this issue is further supported by *Fitch v. Johns–Manville Corp.,* 46 Wn. App. 867, 733 P.2d 562 (1987), in which the court held that an "objection" under CR 17(a) must be made by "a positive step to bring the matter before the court so that the mistake can be corrected." *Fitch,* at 869. The court determined that the defendants' interrogatories and affirmative defenses did not qualify as an "objection" under the rule.

to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of *Levinson* . . . and *Link*.

(Citations omitted.) 39 F.R.D. 85 (1966).

An examination of *Levinson v. Deupree,* 345 U.S. 648, 97 L. Ed. 1319, 73 S. Ct. 914 (1953) and *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C. Cir. 1963) suggests that the failure to formally appoint Rinke as personal representative was the kind of mistake which merits application of the relation back doctrine. In *Levinson,* the plaintiff, as administrator, filed a wrongful death suit. Subsequently, it became apparent that the decedent did not have property in the county in which the administrator had been appointed, thereby rendering the appointment void. The plaintiff obtained a valid appointment in another county and moved to amend the suit to relate the appointment back to the commencement of the action. The United States Supreme Court allowed the amendment of the complaint and the relation back even though the statute of limitation had run. 345 U.S. at 652.

In *Link,* the plaintiffs sued for damages in a tort action. Before the suit was filed, the plaintiffs' insurers had paid them the entire amount they were seeking from the defendants. More than 3 years after the suit was filed the plaintiffs moved, under Fed. R. Civ. P. 15, to amend the complaint to substitute the insurers as plaintiffs. The motion was opposed by the defendants, who argued that it was a new cause of action barred by the statute of limitation. Agreeing with the plaintiffs, the court held that the amendment related back under Fed. R. Civ. P. 15(c) because it asserted a claim arising out of the occurrences set forth in the original complaint. *Link,* at 615.

What constitutes an "honest mistake" or an "understandable mistake" is not entirely clear. Two principles, however, can be gleaned from reading *Levinson* and *Link* in conjunction with the illustrations in the advisory committee

note.[3] First, a mistake can be an "honest mistake" or an "understandable mistake" even though the plaintiff could have ascertained the proper party who should sue or the proper method in which to sue. In both *Levinson* and *Link,* the plaintiffs made a legal mistake which resulted in bringing the suit without the real party in interest. In both cases, the mistake could have been foreseen and avoided, but both mistakes were ultimately held to be not fatal.

Second, the doctrine of relation back under CR 17(a) is restricted to "honest mistakes" or "understandable mistakes" in order to prevent plaintiffs from using the rule to join or substitute persons whose interests were not contemplated from the beginning of the suit. The illustrations in the advisory committee note indicate that relation back is improper when plaintiff has filed a "fictitious name" suit or when a new party, not contemplated at the inception of the suit, is substituted as the real party in interest. *See O'Donnell v. Kusper,* 602 F. Supp. 619, 624 (N.D. Ill. 1985) (Fed. R. Civ. P. 17(a) is "not intended to permit an attorney to locate and substitute a new plaintiff, suing upon a new claim, simply to sustain a pending action.").

Respondents cite several cases to support their contention that the relation back doctrine should not apply here. These cases, however, deal with relation back under CR 15(c), which has been interpreted more strictly than relation back under CR 17(a). *See* 3A L. Orland, Wash. Prac. §

---

[3]The advisory committee note provides: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period."

5185, at 43–44 (3d ed. Supp. 1986). In fact, it is not necessary to resort to CR 15(c) to determine whether relation back applies; the issue may be completely resolved solely on the basis of CR 17(a). 3A L. Orland, Wash. Prac. § 5201, at 324 (3d ed. 1980).

Of the Washington cases which do address relation back under CR 17(a), only one refused to apply the doctrine. In *In re Estate of Boyd,* 5 Wn. App. 32, 485 P.2d 469 (1971), the plaintiff petitioned to set aside the will of her grandson. Plaintiff, however, was not an "interested party" capable of bringing the action under the relevant statutes. At a motion to dismiss the action under CR 17, the court found that the real parties in interest (the plaintiff's niece and nephew) had not ratified the action. In dicta, the trial court said that even if the real parties in interest *had* ratified, the ratification would not relate back because "[t]here is no difficulty in determining the proper party or understandable mistake in the present case, but rather the improper legal conclusion that petitioner was an interested party capable of bringing . . ." the action. *Boyd,* at 36.

We hold that *Boyd* is distinguishable from the present case. In *Boyd,* there was no competent evidence to indicate that the plaintiff contemplated the interests of the real parties in interest at the time she filed the suit. They were simply new plaintiffs suing on a new claim who were introduced in order to sustain the pending action. Thus, the relation back doctrine was properly rejected by the trial court.

In the present case, however, it was always clear to all parties that Rinke intended to bring the suit as personal representative. Her reliance on the community property agreement to indicate that she was the personal representative was an honest mistake understandable under the circumstances. Although she erred in prosecuting the suit without a formal appointment as personal representative, the purpose of the suit was clear from its inception. Rinke's subsequent ratification was not an attempt to insert a new party or a new claim; it simply corrected the record to

reflect the reality of how all the parties viewed the case. Reversed and remanded for trial.

GROSSE and WEBSTER, JJ., concur.

Review denied by Supreme Court July 1, 1987.