[No. 9125-5-I. Division One. August 2, 1982.]

EASTLAKE CONSTRUCTION COMPANY, INC., *Appellant,* v. LEROY HESS, ET AL, *Respondents.*

*R. M. Holt,* for appellant.

*David R. Koopmans,* for respondents.

CORBETT, J.—Plaintiff appeals judgment on defendants' counterclaim. Defendants cross–appeal the amount of judgment and dismissal of their Consumer Protection Act claim.

The defendants (Hess) contracted with the plaintiff (Eastlake) for the construction of a 5–unit apartment building. Under the contract, Eastlake agreed to complete the building for $118,600, according to the plans and specifications drawn by the architect. Construction began in June 1977. The building was not completed on schedule, and Hess found some of the work and materials to be below specification. Although Eastlake promised satisfactory completion, it ultimately abandoned the project, contended substantial completion, and initiated this action for the balance owed on the contract. Hess counterclaimed for breach of contract and violation of the Consumer Protection Act. The trial court awarded Hess damages, less the amount of the contract balance. The court dismissed the consumer protection claim.

Eastlake contends that even though Hess was a proper defendant as a party to the contract, Hess was not the real party in interest as contemplated by CR 17(a),[1] capable of

---

[1]CR 17(a) reads: **"Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the

claiming damage. This contention is based upon Hess' intention to convert the apartment into a condominium. Hess formed a corporation for that purpose and transferred three of the units to others after recording a declaration of condominium. However, Hess failed to transfer title to the corporation and did not assign his interest in the construction contract. When the "real party in interest" defense was raised, Hess obtained assignment of any cause of action the three purchasers might have had against Eastlake.

Modern rules of procedure are intended to allow the court to reach the merits as opposed to disposition on technical niceties. CR 17(a) is designed to expedite litigation. It is not intended to allow technicalities to interfere with the litigable merits. *Fox v. Sackman,* 22 Wn. App. 707, 709, 591 P.2d 855 (1979). By their assignments, the purchasers ratified the counterclaim, thereby satisfying the requirements of CR 17(a). The purpose of the rule and the corresponding statute, RCW 4.08.010,[2] is to protect the adverse party from subsequent claims of third parties. *See West & Wheeler v. Longtin,* 118 Wash. 575, 577, 204 P. 183 (1922). As a party to the contract, Hess is entitled to enforce it and to sue in his name. 17A C.J.S. *Contracts* § 518 (1963). The trial court did not err by failing to dismiss the counterclaim because of the sale of the condominium units.

Eastlake assigns error to admission of exhibit 18, a letter from Hess to the City of Issaquah Building Department relating to a $2,500 bond that Hess posted in order to obtain a temporary occupancy permit. The objection on appeal is that it is self–serving hearsay. The objection at trial was "I don't see the point of the letter." The objection

---

ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

[2]RCW 4.08.010 reads: "Real party in interest to prosecute action. Every action shall be prosecuted in the name of the real party in interest, except as is otherwise provided by law."

was not sufficiently definite to preserve it for appeal. *See Lappin v. Lucurell*, 13 Wn. App. 277, 292, 534 P.2d 1038, 94 A.L.R.3d 594 (1975). The same evidence was admitted without objection through the testimony of Mr. Hess. No harm resulted from admission of the exhibit, nor does Eastlake assert how it claims to have been prejudiced by the exhibit. There was no error in its admission.

Eastlake also assigns error to the trial court permitting the testimony of Mr. Hess as to the fair rental value of the three units that he had sold. Hess testified that the monthly rental of each unit from November 15, 1977, until the date each was first occupied was $275, and that the total amount of lost rent due to Eastlake's delay was $4,262.50. He based these figures upon the fact that he rented one of his own units at $275 per month, and that one of the purchasers later rented a unit for $275 per month. Such testimony is admissible pursuant to ER 701,[3] relating to opinion testimony by lay witnesses. The testimony was properly admitted.

The trial court refused to admit Hess' income tax return and testimony concerning the return offered by Eastlake to show that Hess had not claimed the cost of repairs for tax purposes. The fact of repair was otherwise proved by testimony and canceled checks, and report of the amount for tax purposes would not tend to prove or disprove the fact of damage. The court did not err by refusing the tax return and testimony.

█ Eastlake next contends that Hess, by conduct, waived any unexcused delay and any variations from the specifications. This issue is raised for the first time on appeal and we will not consider it. Waiver is an affirmative defense that must be set forth in the pleadings. CR 8(c). The record does not contain any reply by Eastlake to the

---

[3]ER 701, Opinion Testimony by Lay Witnesses, reads:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Hess counterclaim and we find no record that waiver was affirmatively pleaded. Eastlake's reliance upon *Mahoney v. Tingley*, 85 Wn.2d 95, 529 P.2d 1068 (1975), to relieve it from the operation of this rule is misplaced. *Mahoney* is distinguishable because the affirmative defense was argued in the trial memorandum and before the trial court.

Eastlake further contends that the trial court should have first determined if the contract was substantially performed and then applied the appropriate measure of damages, *i.e.*, (1) difference in value, or (2) cost of remedying the defects. As for the kitchen cabinets, Eastlake contends that the trial court improperly combined these two measures of damage. As for the other damage awards, Eastlake contends that the trial court should have applied the difference in value approach and awarded no damages.

■ The trial court did not make an express finding that the contract had been substantially performed. Eastlake's complaint alleges that it had performed "all of the services contracted for." The trial court found that on February 15, 1978, Eastlake abandoned the project prior to its completion, and that on November 10, 1977, the building was 82.5 percent completed. The measure of damages applied to every item, except the kitchen cabinets which are discussed below, was the cost to complete the structure as contemplated by the contract. The cost to complete is the appropriate measure of damages where the builder has substantially complied with the contract. *Forrester v. Craddock*, 51 Wn.2d 315, 321, 317 P.2d 1077 (1957); *White v. Mitchell*, 123 Wash. 630, 637–38, 213 P. 10 (1923). The trial court implicitly found that the contract had been substantially performed and, therefore, applied the appropriate measure of damages where it awarded damages based upon the cost of remedying the defects.

We turn now to the cross appeal by Hess.

Hess contends that the trial court erroneously awarded the difference between the *value* of the kitchen cabinets specified ($8,725.50) and the *cost* of the cabinets actually installed ($3,700), which difference is $5,025.50. Hess argues

that the trial court improperly combined these two measures of damage, and that he should not be required to accept cabinets that did not meet the plans and specifications. He contends that the trial court should have awarded the cost for removing the unspecified cabinets and installing those specified.

The determination of the award is contained in finding of fact 13A:

> The kitchen cabinets and bath vanities installed by plaintiff were made of particle board with a photographic finish, of modular design, and extended only to 7 feet from the floor, rather than to the ceiling. The specifications called for custom–made, birch finish, plywood cabinets that extended to the ceiling. The removal of the kitchen cabinets and bath vanities and replacing these cabinets with the specified cabinets would constitute economic waste. Defendants are entitled to receive as damages for the installation of the improper cabinets the difference between the value of the specified cabinets ($8,725.50) and the cost of the cabinets actually installed ($3,700), which difference is $5,025.50 and is the amount which plaintiff should reimburse to defendants.

The trial court's finding was based upon the testimony of Mr. Whittaker, a journeyman cabinetmaker, who testified that the 1980 cost to provide the cabinets required by the plans and specifications would be $11,634 plus sales tax, and an additional $4,060 plus sales tax to remove the existing cabinets. He further testified that a reasonable cost for these custom–built cabinets in 1977 would have been approximately 25 percent less than 1980 prices. The trial court's determination of $8,725.50 is approximately 25 percent less than $11,634.

■ The trial court found that removing cabinets and installing the specified ones would constitute economic waste. The determination of economic waste is a legal conclusion, not a matter subject to a finding of fact. *See* 5 A. Corbin, *Contracts.* § 1089, at 492 (1964). *See also Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32, 442 P.2d 621 (1968). Hess is entitled to the reasonable cost of remedying

defects "if that cost is not clearly disproportionate to the probable loss in value to him." Restatement (Second) of Contracts § 348(2)(b) (1981). The cost to bring the kitchen cabinets up to specification is not clearly disproportionate to the probable loss in value to Hess. The trial court should have awarded Hess the cost of the cabinets specified ($8,725.50), plus the cost of removing the existing cabinets ($4,060), for a total award of $12,785.50. The judgment against Eastlake should, therefore, be increased by $7,760, with respect to the award for the kitchen cabinets. In light of our holding, we need not address the contention that the trial court improperly combined two measures of damages.

■ Hess also claimed damage for several unauthorized substitutions of inferior materials for which the record does not support a conclusion of unreasonable economic waste: (1) textured ceiling, $3,754.16, (2) party walls, $1,488.27, (3) ceiling insulation, $3,013.99, and (4) exterior stain, $1,677.43. The trial court awarded no damage because it found the substitutions did not substantially damage the building or result in a substantial loss of value. The trial court did find, however, that these items "did not comply with the contract specifications and plans and were not approved by or accepted by the architect or defendants." Inasmuch as there would be no unreasonable economic waste for correction of the unauthorized substitutions, the trial court erred by not awarding damages to Hess for those items. The judgment against Eastlake should, therefore, have been increased by $9,933.85. In addition to these items, Hess claimed there was a defect in one bathroom floor, a failure to install stainless steel kitchen sinks, and only approximately one–half of the repair cost for the washer/dryer closets was awarded. As for these miscellaneous items, no exception was taken to the court's findings and conclusions relative to damage. Therefore, the objection was not properly preserved for appeal.

■ Hess contends the trial court erred by refusing prejudgment interest. Such interest is allowable only when an amount claimed is liquidated or when the amount of an

unliquidated claim is for an amount due "determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion." *Prier v. Refrigeration Eng'g Co., supra* at 32. Because the amount of damages awarded in this case depended entirely upon opinion or discretion, an award of prejudgment interest was inappropriate and the trial court did not err in its refusal.

 The final assignment of error is the dismissal of the Consumer Protection Act claim. The trial court found that the noncompliance with the contract did not affect the public interest and dismissed the counterclaim. For Consumer Protection Act claims not premised upon a specific statutory violation, as here, the requisite "public interest" is demonstrated when:

> (1) [T]he defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Keyes v. Bollinger,* 31 Wn. App. 286, 290, 640 P.2d 1077 (1982), quoting *Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980). We find no substantial evidence from which the trial court could find that unfair or deceptive acts or practices by Eastlake induced Hess to enter into the June 1977 contract. An extensive offer of proof was made by Hess as to difficulties of Eastlake with the building department and other customers, but it did not go to the question of a practice which induced Hess to act. The trial court properly dismissed the Consumer Protection Act claim.

The action is remanded to the trial court to increase the judgment in Hess' favor by $7,760 for the kitchen cabinets and $9,933.85 for the unauthorized substitutions of inferior

materials, as indicated. The judgment of the trial court is otherwise affirmed.

DURHAM, A.C.J., and SWANSON, J., concur.

Reconsideration denied October 8, 1982.

Review granted by Supreme Court January 7, 1983.